IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SANDRA KARNES and CAROL       §
TALLANT, on behalf of         §
themselves and all others     §
similarly situated,           §
                              §
        Plaintiffs,           §
                              §   CIVIL ACTION NO. H-07-0620
v.                            §
                              §
GEORGE FLEMING and FLEMING    §
& ASSOCIATES, L.L.P.,         §
                              §
        Defendants.           §


MEMORANDUM AND ORDER


        Pending is Defendant George Fleming's, and Fleming
& Associates, L.L.P.'s Motion for Summary Judgment (Document
No. 13).  After carefully considering the motion, response, reply,
sur-reply, sur-response, and the parties' additional submissions,[1]
the Court concludes as follows.


I.  Background


        This dispute arises from Defendants' representation of
Plaintiff Sandra Karnes in her Fen-Phen claims against Wyeth, the

---

[1] The parties have filed thorough, well written briefs on the
motion, and the Court received additional oral argument and
submissions at the Rule 16 Conference.  Defendants also filed a
post-Conference submission to respond further to questions asked by
the Court at the Conference.  Defendants requested yet further oral
argument on the motion but, inasmuch as counsel was able to
identify nothing new to be argued, that request is denied.

manufacturer of Fen-Phen.[2]   As part of Defendants' process for screening potential clients, Defendants conducted an echocardiogram testing program to evaluate the possible merits of their potential clients' Fen-Phen claims.   In doing so, Defendants thus advanced $29 million of their own funds to cause echocardiograms to be performed on 35,000 persons whom they ultimately determined did not have meritorious claims and for whom Defendants never filed suit against Wyeth.   Defendants accepted the cases and did file suit, however, for another 8,000 persons, including Plaintiff.   When Defendants ultimately negotiated a settlement with Wyeth in behalf of their 8,000 clients, including Plaintiff, they "strongly recommended" that their clients accept the settlement offer and provided to Plaintiff a form of Complete and General Release in which she would forever release and discharge her claims against Wyeth.   The proposed settlement packet to Plaintiff also included a summary of her gross settlement amount, less certain items including attorney's fees and expenses, and the net amount that she should expect.   The Client Settlement Statement did not specifically disclose that Plaintiff would be charged with any portion of the $29 million that Defendants had expended for echocardiograms performed on another 35,000 persons whom Defendants then chose not to represent and for whom they never filed suit.

_____

[2] Co-Plaintiff Carol Tallant was dismissed from the case by agreement of the parties.   Document No. 22.

2

Plaintiff and her husband on July 9, 2006, timely executed the Complete and General Release in favor of Wyeth and Defendants signed the same on July 17, 2006.

Thereafter, Defendants consummated the authorized settlement with Wyeth and, in exchange for Plaintiff's Complete and General Release of Wyeth, Wyeth delivered to Plaintiff's counsel the agreed settlement funds.  By check dated 9/27/06, Defendants remitted to Plaintiff the net proceeds of the settlement as had been described in the Client's Settlement Statement executed by Plaintiff on July 9, 2006.  About five months after receiving what was described as her net settlement proceeds, Plaintiff filed this suit on her own behalf, and that of the 8,000 Fen-Phen clients, alleging that Defendants breached their fiduciary duties as attorneys by: (1) charging Plaintiff and other class members $29 million for echocardiograms performed on 35,000 unrelated persons who neither participated in the litigation nor in the settlement--tests that allegedly conferred no benefit on their clients; and (2) failing to disclose to Plaintiff and other class members the substance of these and other allegedly unreasonable expenses that Defendants allocated to and proportionately deducted from Plaintiffs' shares of the Fen-phen settlement.

Several weeks after this case was filed Defendants issued to their 8,000 settling clients a second round of much smaller checks to disburse what Defendants described as the remaining "balance of

the two reserve funds" created by the Wyeth settlement payments. In their transmittal letter conveying the second round of checks, "my last letter to you in the fen-phen litigation," Defendants disclosed that a suit had been filed alleging that Defendants had improperly charged expenses. Defendants in this letter for the first time specifically mentioned the additional 35,000 echocardiograms performed on persons who were not plaintiffs and who were not eligible to participate in the settlement, adding that Defendant believed the charge was "entirely appropriate." Plaintiff and the 8,000 other clients were not asked to approve this expense nor were they told that Defendants would regard acceptance of the second check as a ratification of the expense.

Defendants now move for summary judgment on the grounds that Plaintiff's uncontroverted acceptance and retention of Wyeth settlement payments both before and after she filed this suit establishes that she ratified the disputed expenses as a matter of law.

## II.  <u>Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate
the absence of a genuine issue of material fact." Celotex Corp. v.
Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the
nonmovant to show that summary judgment should not be granted.
Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th
Cir. 1998).  A party opposing a properly supported motion for
summary judgment may not rest upon mere allegations or denials in
a pleading, and unsubstantiated assertions that a fact issue exists
will not suffice.  Id.  "[T]he nonmoving party must set forth
specific facts showing the existence of a 'genuine' issue
concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district
court must view the evidence "through the prism of the substantive
evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.
2505, 2513 (1986). All justifiable inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in
this light, could not lead a rational trier of fact to find" for
the nonmovant, then summary judgment is proper. Kelley v. Price-
Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing
Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the
factfinder could reasonably find in [the nonmovant's] favor, then

5

summary judgment is improper." <u>Id.</u>  Even if the standards of Rule
56 are met, a court has discretion to deny a motion for summary
judgment if it believes that "the better course would be to proceed
to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

## III.   <u>Discussion</u>

Defendants assert that Plaintiff ratified the transaction
underlying her breach of fiduciary duty claim when she twice
accepted her portion of the settlement payments with what
Defendants contend was full knowledge of the nature and amount of
the expenses deducted from those payments.  Ratification is an
affirmative defense for which the defendant bears the burden of
proof.  *See* <u>Harris v. Archer</u>, 134 S.W.3d 411 (Tex. App.--Amarillo
2004, pet. denied); <u>Motel Enters., Inc. v. Nobani</u>, 784 S.W.2d 545,
547 (Tex. App.--Houston [1st Dist.] 1990, no writ).  "The elements
of ratification are: (1) approval by act, word, or conduct;
(2) with full knowledge of the facts of the earlier act; and
(3) with the intention of giving validity to the earlier act."
<u>Gibson v. Bostick Roofing & Sheet Metal Co.</u>, 148 S.W.3d 482, 492
(Tex. App.--El Paso 2004, no pet.)(citation omitted); *accord* <u>Samms</u>
<u>v. Autumn Run Comty. Improvement Ass'n, Inc.</u>, 23 S.W.3d 398, 403
(Tex. App.--Houston [1st Dist.] 2000, pet. denied).  "Ratification
may be either express or implied, but it must result from acts

clearly evidencing an intention to ratify." <u>Lesikar v. Rappeport</u>, 33 S.W.3d 282, 300 (Tex. App.--Texarkana 2000, pet. denied).

Numerous Texas appellate courts have held that a principal's acts or conduct may constitute ratification of her agent's breach of fiduciary duty only if the agent's unauthorized act was done on behalf of the alleged ratifier rather than for the benefit of the agent or a third party. *See* <u>Enserch Corp. v. Rebich</u>, 925 S.W.2d 75, 84 (Tex. App.--Tyler, 1996, writ dism'd); <u>Gen. Dynamics v. Torres</u>, 915 S.W.2d 45, 50 (Tex. App.--El Paso 1995, writ denied); <u>Spangler v. Jones</u>, 861 S.W.2d 392, 396 (Tex. App.--Dallas 1993, writ denied)(en banc); <u>Horton v. Robinson</u>, 776 S.W.2d 260, 267 (Tex. App.--El Paso, 1989, no writ); <u>Rhodes, Inc. v. Duncan</u>, 623 S.W.2d 741, 744 (Tex. App.--Houston [1st Dist.] 1981, no writ); <u>Herider Farms-El Paso, Inc. v. Criswell</u>, 519 S.W.2d 473, 477 (Tex. Civ. App.--El Paso 1975, writ ref'd n.r.e.); *see also* <u>Coffey v. Ft. Wayne Pools, Inc.</u>, 24 F. Supp. 2d 671, 683 (N.D. Tex. 1998) (collecting cases and holding an agent's unauthorized conduct that conferred only an attenuated benefit to the principal could not be ratified); RESTATEMENT (THIRD) OF AGENCY § 4.02, reporter's note c (2006) (citing Texas as the sole jurisdiction with this limited view of ratification). The Dallas Court of Appeals sitting *en banc* reversed a judgment in favor of the defendant on his defense of ratification because the defendant breached his fiduciary duty to the plaintiff for the benefit of the defendant himself, not for the

plaintiff, for which reason the jury's finding of ratification based on the plaintiff's conduct was set aside. Spangler, 861 S.W.2d at 395-96. Because a "breach of fiduciary duty subsumes claims of constructive fraud," and "'no principal would confer an authority to practice a fraud upon itself,'" the jury's finding that the defendant breached his fiduciary duty to the plaintiff by entering into an agreement that significantly benefitted himself at the plaintiff's expense entitled the plaintiff to judgment on his breach of fiduciary duty claim. Id. (quoting Herider Farms, 519 S.W.2d at 478).

In this case, it is undisputed that Defendants, as Plaintiffs' attorneys, owed a high fiduciary duty to their clients. See Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988)("A fiduciary relationship exists between attorney and client."); accord In re Wright, 138 Fed. Appx. 690, 693 (5th Cir. 2005) (unpublished opinion) (characterizing the attorney-client relationship under Texas law as "highly fiduciary in nature" and "requir[ing] the utmost good faith"). Plaintiff's breach of fiduciary duty claim is predicated on Defendants' alleged "self dealing" by "t[aking] a cost in excess of $29 million incurred for [D]efendants' sole benefit and impos[ing] that cost on [P]laintiff and the Class Members, without disclosure of the nature of the charges, and without benefitting [P]laintiff and the members of the Class in any way," and by "failing to disclose and misrepresenting the

8

unreasonable charges for meals, travel, lodging, and [other] improper expenses . . . ."   Document No. 1 ¶¶ 57-58.   As in *Spangler*, the conduct alleged suggests that Defendants committed a constructive fraud against Plaintiff and the putative class members for the benefit of Defendants and to the detriment of the clients to whom they owed a fiduciary duty.   *See, e.g.*, <u>Miller v. Kennedy & Minshew, P.C.</u>, 142 S.W.3d 325 (Tex. App.--Ft. Worth 2003, pet. denied)(construing <u>Spangler</u> narrowly to invalidate ratification only when the fiduciary's conduct involved constructive fraud that resulted in injury to the beneficiary); *see also* <u>Redmon v. Griffith</u>, 202 S.W.3d 225, 240 (Tex. App.--Tyler 2006, pet. denied)(explaining that "a breach of fiduciary duty is a form of constructive fraud"); <u>In re Estate of Herring</u>, 970 S.W.2d 583, 586 n.3 (Tex. App.--Corpus Christi 1998, no pet.)("Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship."). Defendant's cited authorities are not persuasive because, although they impliedly recognize ratification as a defense to breach of fiduciary duty, they did not involve (or declined to resolve) direct challenges to the availability of the ratification defense when the fiduciary's questioned conduct benefitted the fiduciary at the expense of the principal or supposed "ratifier."[3]   Under

---

[3] *See, e.g.*, <u>Fulbright & Jaworski, L.L.P. v. Mariner Health Care, Inc.</u>, Civil No. SA-05-CA-1127-FB, 2006 WL 4007923, at *13 (W.D. Tex. May 22, 2006)(holding plaintiff client, represented by

its separate corporate counsel, ratified amount of disputed
attorneys' fees owed to defendant by plaintiff's proposing and
executing a new contract in which the amount of the debt, after all
offsets and credits, was agreed upon and a deferred payment
schedule was agreed); <u>Land Title Co. of Dallas, Inc. v. F. M.
Stigler, Inc.</u>, 609 S.W.2d 754, 755, 757-58 (Tex. 1980)(holding a
principal's retention of funds procured as a result of his agent's
unauthorized--but not self-interested--act, after the principal
became aware of the agent's conduct, ratified the transaction);
<u>Archer v. Griffith</u>, 390 S.W.2d 735, 742 (Tex. 1965)(affirming
judgment against a defense of ratification that was neither pled
nor conclusively established by the evidence); <u>Lifshutz v.
Lifshutz</u>, 199 S.W.3d 9, 22 (Tex. App.--San Antonio 2006, pet.
denied)(recognizing the Texas rule and quoting from <u>Herider Farms-
El Paso, Inc.</u>, "that ratification is not available to condone a
corporate officer or director's [self interested] disloyalty or
fraud," but upholding trial court's finding that plaintiff's
informed actions were sufficient to ratify payment of personal
expenses that were similar to other personal expenses that had been
paid "for years"); <u>Tex. First Nat'l Bank v. Ng</u>, 167 S.W.3d at 863
n.41 (held, no ratification because there was no evidence that
alleged ratifiers had full knowledge of bank officers' breach of
fiduciary duties at time of the alleged ratifications, and the
court therefore found no need to reach additional argument that a
breach of fiduciary duty cannot be ratified); <u>Harris</u>, 134 S.W.3d at
427-28 (affirming a directed verdict that the plaintiff ratified a
partnership agreement allegedly induced by fraud when, after
discovery of the alleged fraud, he acknowledged the agreement by
remaining a partner in the partnership, sought to enforce his
rights under the agreement, and asserted in court pleadings,
affidavits, deposition, and trial testimony that the agreement was
valid).

    <u>Lee v. Wal-Mart Stores</u>, 943 F.2d 554, 556 n.4 (5th Cir. 1991),
contains dictum that "[r]ecent Texas cases implicitly recognize the
viability of defenses such as estoppel and ratification to claims
between fiduciaries," citing only two cases, first, the panel
decision in <u>Spangler v. Jones</u>, 797 S.W.2d 125, 129 (Tex. Civ. App.-
-Dallas 1990, writ denied), which was superceded after a new trial
by the *en banc* decision in <u>Spangler v. Jones</u>, 861 S.W.2d 392 (Tex.
App.--Dallas 1993, writ denied), discussed above.  The other case
<u>Lee</u> cites neither addressed a challenge to the availability of the
ratification defense, nor held ratification to apply to the facts
presented.  *See* <u>Lee</u>, 943 F.2d at 556 n.4 (citing <u>Johnson v. J.
Hiram Moore, Ltd.</u>, 763 S.W.2d 496, 499 (Tex. App.--Austin 1988,
writ denied)(holding the plaintiff-partners were not precluded from

prevailing Texas law, Defendants must prove that their conduct benefitted or was fair to Plaintiff and other class members in order to prevail on their ratification defense.  Defendants have failed to present evidence, much less uncontroverted evidence, to establish as a matter of law on summary judgment that Plaintiff and other class members benefitted from the non-client echocardiograms and other costs for which they were charged.

Apart from the foregoing, Defendants' ratification argument also fails because the settlement funds accepted and retained by Plaintiff were irrevocably her funds from Wyeth, not Defendants' funds.  Trickett v. A.G. Edwards & Sons, Inc., No. Civ.A. 3:98-CV2912M, 2000 WL 1887526, at *1-2 (N.D. Tex. Dec. 26, 2000) aff'd, 31 Fed. Appx. 833 (5th Cir. 2002)(per curiam)(unpublished opinion), is instructive.  In Trickett, the defendant stockbroker breached its fiduciary duty to plaintiff by causing plaintiff's Time Warner stock options to be exercised without plaintiff's consent.  After the options were exercised, however, the transaction was final and plaintiff or someone else acting for him, had to pay for the exercise of those options.  Plaintiff sold some of the stock to pay for the unauthorized exercise of his stock options, and retained the balance of the stock.  The defendant broker contended that

---

recovering against another partner for failing to disclose his receipt of a portion of construction fees paid, in breach of his fiduciary duty to his fellow partners, even if the partnership had ratified the transaction).

11

these acts constituted a ratification of the defendant's conduct.
Judge Barbara M. G. Lynn of the Northern District of Texas held
that the ratification argument was unsupportable both factually and
legally:

> As a matter of law, Plaintiff's acquiescence to the sale
> of some of his stock to pay for the unauthorized exercise
> of his stock options cannot constitute a ratification of
> the exercise.  Similarly, Plaintiff's retention of the
> remaining stock cannot constitute a ratification of
> Defendant's conduct, because the right to that stock,
> upon exercise, belonged to the Plaintiff, not to the
> Defendant.

Id. at *2.  The same is true in this case.  The transaction here
was Plaintiff's settlement of her Fen-Phen claims against Wyeth, in
which Wyeth paid an agreed amount of settlement proceeds in
exchange for Plaintiff's delivery to Wyeth of her Full and Complete
Release.  The settlement is final, and Wyeth holds a Full and
Complete Release from Plaintiff.  Correspondingly, the settlement
proceeds belong to Plaintiff, subject only to whatever attorney's
fees and expenses she may properly owe Defendants for having
represented her against Wyeth.  Defendants themselves necessarily
must concede that every dollar remitted by them to Plaintiff in
both checks are Wyeth settlement funds to which Plaintiff is
entitled and as to which Defendants have no claim.[4]  The only

---

[4] See also TEX. DISCIPLINARY R. PROF'L CONDUCT § 1.14(c).  When a
dispute arises between lawyer and client regarding their interests
in funds in the lawyer's trust account, "the portion in dispute
shall be kept separate by the lawyer until the dispute is resolved,

*disputed* funds are a portion of Wyeth settlement funds *withheld* from Plaintiff for what Plaintiff alleges are unauthorized expenses.  As Judge Lynn put it, the Wyeth funds remitted to Plaintiff "belonged to the Plaintiff, not to the Defendant." <u>Id.</u> at *2.  It follows that Plaintiff's acceptance and retention of her own property "cannot constitute a ratification of Defendant's conduct" in withholding additional settlement funds for allegedly unauthorized expenses.  <u>Id.</u>

### IV.  <u>Order</u>

For the foregoing reasons, it is ORDERED that Defendant George Fleming's, and Fleming and Associates, L.L.P.'s Motion for Summary Judgment (Document No. 13) is DENIED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this <u>21st</u> day of November, 2007.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

and the *undisputed portion shall be distributed* appropriately."
<u>Id.</u> (emphasis added).